IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - x

DONALD F. BENOIT, Derivatively on :
Behalf of MBNA CORP., and on Behalf of :
Himself and All Others Similarly Situated, :
:
          Plaintiff, :
   v. :
:
BRUCE L. HAMMONDS, *et al.*, :    Civ. No. 07-CV-561-GMS
:
          Defendants, :
:
  – and– :
:
BANK OF AMERICA CORPORATION, a :
Delaware corporation, AS SUCCESSOR :
IN INTEREST TO MBNA CORP., and :
MBNA CORP., a Maryland corporation, :
:
         Nominal Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - x

*Additional Caption on Following Page*

## REPLY BRIEF IN SUPPORT OF THE MBNA
## OUTSIDE DIRECTOR DEFENDANTS' MOTION TO DISMISS

|  |  |
|---|---|
|  | Edward P. Welch (I.D. No. 671) |
|  | Edward B. Micheletti (I.D. No. 3794) |
|  | SKADDEN, ARPS, SLATE, |
|  |   MEAGHER & FLOM LLP |
| Of The New York Bar: | One Rodney Square |
| Jay B. Kasner | P.O. Box. 636 |
| Susan L. Saltzstein | Wilmington, Delaware  19899 |
| SKADDEN, ARPS, SLATE, | Tel.: (302) 651-3000 |
|   MEAGHER & FLOM LLP | Fax: (302) 651-3001 |
| 4 Times Square | E-mail:  edward.welch@skadden.com |
| New York, New York  10036-6522 |  |
| Tel: (212) 735-3000 | *Attorneys for the MBNA Outside Directors* |

DATED:  June 5, 2008

```
-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- x
                                            :
LEMON BAY PARTNERS, LLP and                 :
MALCOLM ROSENWALD,                          :
                                            :
            Plaintiff,                      :
                                            :
      v.                                    :
                                            :
BRUCE L. HAMMONDS, et al.,                  :        Civ. No. 07-CV-562-GMS
                                            :
            Defendants,                     :
                                            :
   -- and--                                 :
                                            :
BANK OF AMERICA CORPORATION,                :
AS SUCCESSOR IN INTEREST TO                 :
MBNA CORP., and MBNA CORP.,                 :
                                            :
            Nominal Defendants.             :
                                            :
-- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- x
```

# TABLE OF CONTENTS

PAGE

TABLE OF CASES AND AUTHORITIES.............................................................................i

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT.................................................................................................................... 3

I.    THE DUPLICATIVE COMPLAINTS ARE PROCEDURALLY
      UNSOUND AND SHOULD BE DISMISSED ON RES JUDICATA
      GROUNDS.............................................................................................................. 3

      A.    Defendants' Motion To Dismiss Is Properly Before The Court.................... 3

      B.    The Doctrine Of Res Judicata Bars Plaintiffs' Claims ................................ 5

      C.    Independently, The Court Should Dismiss The Claims Against The
            Outside Directors For Lack Of Subject Matter Jurisdiction......................... 7

II.   THE DUPLICATIVE COMPLAINTS SHOULD BE DISMISSED
      BECAUSE DEMAND WAS NOT EXCUSED. ....................................................... 8

      A.    Under Maryland Law, Breach Of Fiduciary Duty Claims Are
            Derivative. ................................................................................................... 9

      B.    Plaintiffs Lost Standing To Pursue Claims Against The Outside
            Directors. ................................................................................................... 11

      C.    Plaintiffs Have Not Excused Their Failure To Make A Pre-Suit
            Demand....................................................................................................... 13

III.  IN THE ALTERNATIVE, THE DUPLICATIVE COMPLAINTS
      SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM...................... 14

      A.    Conclusory Breach Of Fiduciary Duty Allegations Fail To State A
            Claim. ........................................................................................................ 14

      B.    Maryland Law Does Not Recognize Plaintiffs' *Revlon* Claims. ................. 17

      C.    The Outside Directors Are Not Subject To Liability For Money
            Damages. .................................................................................................... 20

CONCLUSION .............................................................................................................. 20

In re Frederick's of Hollywood, Inc. S'holders Litig.,
   C.A. No. 15944, 2000 WL 130630 (Del. Ch. Jan. 31, 2000) ................................... 16

In re Freeport-McMoRan Sulphur, Inc. S'holders. Litig.,
   C.A. No. 16729, 2001 WL 50203 (Del. Ch. Jan. 11, 2001) ..................................... 15

Grasty v. United States Patent & Trademark Office,
   211 Fed. Appx. 952 (Fed. Cir. 2007) ..................................................................... 5, 6

Grill v. Hoblitzell,
   771 F. Supp. 709 (D. Md. 1991) ............................................................................... 20

Grobow v. Perot,
   526 A.2d 914 (Del. Ch. 1987), aff'd, 539 A.2d 180 (Del. 1988) ............................ 14

Indurated Concrete Corp. v. Abbott,
   74 A.2d 17 (Md. 1950) ............................................................................................. 10

Jasinover v. Rouse Co.,
   C.A. No. 13-C-04-59594, 2004 WL 3135516
   (Md. Cir. Ct. Nov. 4, 2004) ................................................................... 10, 17, 18, 19

Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.,
   C.A. No. RDB 05-841, 2005 WL 2989343 (D. Md. Nov. 3, 2005) ................... 10, 11

Kaplan v. Peat, Marwick, Mitchell & Co.,
   540 A.2d 726 (Del. 1988) ........................................................................................ 11

LeBoyer v. Greenspan,
   C.A. No. 03-5603-GHK, 2007 WL 4287646 (C.D. Cal. June 13, 2007) ............... 10

Lemon Bay Partners LLP v. Hammonds,
   C.A. No. 05-327 (GMS), 2007 WL 1830899
   (D. Del. June 26, 2007) ..................................................................................... 1, 7, 8

Lewis v. Ward,
   852 A.2d 896 (Del. 2004) ........................................................................................ 12

Magnus Elecs., Inc. v. La Republica Argentina,
   830 F.2d 1396 (7th Cir. 1987) ................................................................................... 7

Mona v. Mona Elec. Group, Inc.,
   934 A.2d 450 (Md. Ct. App. 2007) .......................................................................... 10

In re MONY Group Inc. S'holder Litig.,
     852 A.2d 9 (Del. Ch. 2004) ............................................................................... 16, 19

Parnes v. Bally Entm't Corp.,
     C.A. No. 15192, 2001 WL 22474 aff'd mem., 788 A.2d 131 (Del. 2001) ............. 16

Perry v. Sheahan,
     222 F.3d 309 (7th Cir. 2000) ....................................................................... 6

Pesnell v. Arsenault,
     490 F.3d 1158 (9th Cir. 2007) ...................................................................... 5

In re Prudential Ins. Co. Derivative Litig.,
     659 A.2d 961 (N.J. Super. Ct. Ch. Div. 1995) ........................................................ 14

Sanchez v. Caribbean Carriers Ltd.,
     552 F.2d 70 (2d Cir. 1977) ..................................................................... 6, 7

Shaw v. Merritt-Chapman & Scott Corp.,
     554 F2d 786 (6th Cir. 1977) ....................................................................... 6

Storetrax.com, Inc. v. Gurland,
     915 A.2d 991 (Md. 2007) ........................................................................ 9

Strougo v. Bassini,
     282 F.3d 162 (2d Cir. 2002) ..................................................................... 10

Tafflin v. Levitt,
     608 A.2d 817 (Md. Ct. Spec. App. 1992)................................................................ 10

In re Talley Indus., Inc. S'holders Litig.,
     C.A. No. 15961, 1998 WL 191939 (Del. Ch. Apr. 13, 1998) ................................. 13

Thorn v Reliance Van Co.,
     C.A. No 84-1740, 1985 U.S. App. LEXIS 25929 (3d Cir. Dec. 6, 1985).............. 10

Toner v. Baltimore Envelope Co.,
     498 A.2d 642 (Md. 1985) ...................................................................... 10

In re Tower Air, Inc.,
     416 F.3d 229 (3d Cir. 2005) .............................................................. 14, 15, 16, 17

In re Toys "R" Us, Inc., S'holder Litig.,
     877 A.2d 975 (Del. Ch. 2005) ................................................................... 19

Univ. of Md. at Baltimore v. Peat Marwick Main & Co.,
      923 F.2d 265 (3d Cir. 1991) ............................................................... 10

Waller v. Waller,
      49 A.2d 449 (Md. 1946) ..................................................................... 9

Walsh v. Int'l Longshoremen's Ass'n, AFL-CIO,
      630 F.2d 864 (1st Cir. 1980) .............................................................. 6

Werbowsky v. Collomb,
      766 A.2d 123 (Md. 2001) ........................................................ 9, 10, 11

Wittman v. Crooke,
      707 A.2d 422 (Md. Ct. Spec. App. 1998)............................................ 18

Yanow v. Scientific Leasing, Inc.,
      C.A. Nos. 9536, 9561, 1988 WL 8772 (Del. Ch. Feb. 5, 1988)............... 19

## STATUTES

Maryland's Corporate Code § 2-405.1 ...................................................... 9, 17, 18

Md. Code Ann. Cts. & Jud. Proc. Code § 5-418 .............................................. 20

Kenneth B. Abel, The Maryland Corporation: Legal Aspects of
      Organization & Operation § VI(H) (2004)............................................ 18

James J. Hanks, Jr., Maryland Corporation Law § 6.9...................................... 20

## PRELIMINARY STATEMENT

As explained in our opening brief, all of the claims against the Outside Directors should be dismissed.[1]  Plaintiffs offer no arguments warranting a different result.

*First*, Plaintiffs' continued pursuit of *state law* fiduciary claims against the Outside Directors in this action ignores this Court's earlier decision dismissing virtually identical claims in the Original Action on jurisdictional grounds.  Lemon Bay Partners, LLP v. Hammonds, C.A. No. 05-327 (GMS), 2007 WL 1830899, at *1, 5 (D. Del. June 26, 2007).  (The Court "is without jurisdiction over the subject matter of this action" because the "state law claims … substantially predominate over the federal claim").  By filing the Duplicative Complaints, Plaintiffs have violated the Court-ordered Consolidation Order entered in the Original Action.  Plaintiffs have *also* appealed the Court's dismissal of the Original Action, and are attempting to pursue their claims in both a trial court and appellate court *at the same time*.  Plaintiffs' tactics are a blatant abuse of the judicial process and should not be condoned.

*Second*, these Duplicative Complaints should be dismissed on *res judicata* grounds.  Indeed, forcing the Court to revisit already decided issues wastes the Court's resources and is exactly what the principle of *res judicata* is designed to prevent.  Independently, the Court may also dismiss the claims against the Outside Directors *again* for lack of subject matter jurisdiction, because the state law claims against the Outside Directors "substantially predominate over the federal claims."  Lemon Bay, 2007 WL 1830899, at *5.  In fact, *Plaintiffs do not assert any federal law claims against the Outside Directors.*

---

[1]    The defined terms in this reply brief are the same as those used in the Outside Directors' Opening Brief ("Op. Br.").

*Third*, the Duplicative Complaints should be dismissed because under controlling Maryland law, breach of fiduciary duty claims are derivative, not direct, in nature, and the BAC Merger extinguished Plaintiffs' standing to pursue them. The contemporaneous ownership rule also precludes Plaintiffs from asserting claims on behalf of BAC based on events that occurred before they acquired shares in BAC. Even if Plaintiffs were allowed to circumvent the contemporaneous ownership rule and assert derivative claims, Plaintiffs' claims should be dismissed for failure to make a demand on either the MBNA or BAC board of directors, and for failing to plead particularized facts showing that demand would be futile.

*Fourth*, the Duplicative Complaints should be dismissed as to the Outside Directors because Plaintiffs have not pled around Maryland's version of the business judgment rule. Although Plaintiffs attempt to conflate the Outside Directors with Mr. Hammonds and the insider defendants, Plaintiffs have alleged nothing in particular about the Outside Directors, and do not even identify them by name in their answering brief. Critically, Plaintiffs do not even contest the argument raised in the Outside Directors' opening brief that all of the fiduciary duty claims raised against them must be dismissed because, as alleged, a majority of the MBNA board was disinterested and independent, and thus the business judgment rule applies to shield the board's decisions. Further, Maryland law does not recognize the so-called <u>Revlon</u> duties that are the basis for nearly all of Plaintiffs' allegations against the Outside Directors. Moreover, the claims against the Outside Directors should be dismissed because MBNA's certificate of incorporation immunizes them from any liability predicated on Plaintiffs' Merger-related claims, and because well-informed MBNA shareholders voted overwhelmingly in favor of the BAC Merger, effectively extinguishing Plaintiffs' claims.

For all of these reasons, and as discussed further below, the motion to dismiss should be granted and all claims against the Outside Directors should be dismissed.

2

**ARGUMENT**

**I.    THE DUPLICATIVE COMPLAINTS ARE PROCEDURALLY UNSOUND AND SHOULD BE DISMISSED ON RES JUDICATA GROUNDS.**

As we explained in our opening brief, the Duplicative Complaints are procedurally improper, violated the Court's Consolidation Order in the Original Action, and should be dismissed for several reasons, including on *res judicata* grounds. (Op. Br. at 10-15, D.I. 41). Independently, the Court may also again dismiss the claims against the Outside Directors for lack of subject matter jurisdiction. None of the arguments Plaintiffs raise in their answering brief should alter this conclusion.

**A.    Defendants' Motion To Dismiss Is Properly Before The Court.**

Plaintiffs first argue that the Outside Directors were barred from filing a motion to dismiss the Duplicative Complaints by the joint scheduling stipulation entered by the Court on December 7, 2007. (Ans. Op. Br. at 2, 5). That argument is based on a number of inaccurate assumptions and premises.

*First*, although any motion to dismiss the amended complaint was to be filed "no later than sixty days after the amended complaint is filed" (D.I. 24 ¶ 3) (emphasis added), the scheduling stipulation did not set a date before which motions to dismiss could not be filed. Nor did the stipulation purport to bar defendants from moving to dismiss the Duplicative Complaints. (Defendants had no obligation to answer, move, or otherwise respond to those complaints, but were never barred from doing so.) Indeed, the stipulation expressly preserved Defendants' rights to contest jurisdiction. (D.I. 24 ¶ 5). Moreover, Plaintiffs themselves implicitly invited the filing of motions to dismiss in the brief in support of their motion to lift the discovery stay, in which Plaintiffs took the position that a stay of discovery was not appropriate because no motions to dismiss had yet been filed in the Original Action. (D.I. 34 at 2).

3

*Second*, Plaintiffs are the ones who have violated an order of this Court. The Consolidation Order in the Original Action prohibited Plaintiffs (or anyone else) from filing new actions arising out of the same subject matter against the same defendants, unless those claims were brought within the context of the Original Action. (D.I. 28, ¶¶ 14, 15). In filing the Duplicative Actions, Plaintiffs violated the Consolidation Order by bringing essentially the same claims against the same group of defendants in a separate proceeding from the Original Action. Plaintiffs have failed even to address this violation in their answering brief.

*Third*, Plaintiffs suggest that this motion should not have been filed because Plaintiffs "apprised the Outside Directors by letter dated April 2, 2008" that Plaintiffs each believed they had valid reasons to refile their complaints. (Ans. Br. at 2). Plaintiffs fail to mention that before that letter, Defendants had already asked Plaintiffs to withdraw their Duplicative Complaints in light of the Court's denial of their motion for reconsideration. (Op. Br. Ex. A).

*Fourth*, that the other defendants have not moved to dismiss does not, as Plaintiffs suggest, cast doubt on the Outside Directors' motion to dismiss. The Outside Directors originally raised the subject matter jurisdiction issue that led to the dismissal of the Original Action, and, as explained in the opening brief, the "new" federal claims in the Duplicative Complaints are not even brought against the Outside Directors. The Duplicative Complaints should not change the Court's ruling that it lacks jurisdiction over Plaintiffs' state law claims against the Outside Directors. A motion by the Outside Directors to dismiss the Duplicative Complaints is not only proper, but warranted under the circumstances.

### B.    The Doctrine Of Res Judicata Bars Plaintiffs' Claims.

Plaintiffs next argue that their claims are not barred by *res judicata* because the

Court's dismissal was "not on the merits," and because the proxy claims Plaintiffs added to the

Duplicative Complaints provide a "new basis" for jurisdiction.  (Ans. Br. at 14-16).

Though not binding as to matters beyond its scope, the Court's order of dismissal

is preclusive as to issues of subject matter jurisdiction, and bars further litigation of Plaintiffs'

state law claims in federal court.[2]  "Although the dismissal of a complaint for lack of jurisdiction

does not adjudicate the merits so as to make the case *res judicata* on the substance of the asserted

claim, it does adjudicate the court's jurisdiction, *and a second complaint cannot command a*

*second consideration of the same jurisdictional claims*."  Boone v. Kurtz, 617 F.2d 435, 436 (5th

Cir. 1980) (holding that complaint was properly dismissed where District Court had already

dismissed an almost identical complaint for lack of jurisdiction) (emphasis added).  Accord

Bromwell v. Michigan Mut. Ins. Co., 115 F.3d 208, 212-13 (3d Cir. 1997) ("A dismissal for lack

of subject-matter jurisdiction, while 'not binding as to all matters which could have been raised,'

is, however, conclusive as to matters actually adjudged.") (citations omitted);[3] see Grasty v.

---

[2]    Plaintiffs' argument that there was no "on the merits" adjudication misses the point.  Though
the previous ruling was not on the underlying merits, it was the final ruling on the question of
subject matter jurisdiction and bars further litigation on that ground.  For this reason,
Plaintiffs' authority is inapposite.  See Pesnell v. Arsenault, 490 F.3d 1158, 1159-60 (9th Cir.
2007) ("The action was not properly brought in the first place and therefore the court had no
ability to render a judgment on the merits."); Carter v. United States Dep't of Navy, C.A. No.
06-5378, 2007 WL 4561149, at *2 (D.C. Cir. Dec. 3, 2007) (finding prior dismissal for lack
of subject matter jurisdiction not dispositive on merits); American Nat'l Bank of Jacksonville
v. Fed. Deposit Ins. Corp., 710 F.2d 1528, 1535 (11th Cir. 1983) (stating action dismissed for
lack of subject matter jurisdiction not final judgment on merits of that action).

[3]    Plaintiffs argue that Bromwell has no application "[w]here the second complaint contains a
different basis for the assertion of jurisdiction."  (Ans. Br. at 15-16, citing Okoro v. Bohman,
164 F.3d 1059, 1063 (7th Cir. 1999)).  Plaintiffs have it wrong, as a later Seventh Circuit
opinion makes clear.  See Perry v. Sheahan, 222 F.3d 309, 318 (7th Cir. 2000) ("[W]here a
*(cont'd)*

5

United States Patent & Trademark Office, 211 Fed. Appx. 952, 953-54 (Fed. Cir. 2007) (applying Third Circuit law) ("It has long been the rule that principles of *res judicata* apply to jurisdictional determinations – both subject matter and personal.") (citation omitted); Shaw v. Merritt-Chapman & Scott Corp., 554 F.2d 786, 789 (6th Cir. 1977) ("[W]hile a dismissal for lack of jurisdiction does not constitute an adjudication upon the merits, it does constitute a binding determination on the jurisdictional question, which is not subject to collateral attack."). (*See generally* Op. Br. at 13-14).

Therefore, Plaintiffs' only avenue, should they wish to re-litigate the issue of subject matter jurisdiction, is to appeal the decision, and not refile virtually the same actions in the same court. Shaw, 554 F.2d at 789 (holding that plaintiffs were barred from bringing a subsequent suit asserting essentially the same claims and citing the same jurisdictional basis because plaintiff did not appeal the dismissal). As explained in our opening brief (Op. Br. at 14), "the remedy for a [purported] wrong decision is the right of appeal, not an unlimited opportunity to bring repetitious petitions." See Walsh v. Int'l Longshoremen's Ass'n, AFL-CIO, 630 F.2d 864, 869 (1st Cir. 1980).

Moreover, Plaintiffs, who chose not to amend their pleadings when they had the chance, cannot avoid dismissal now by adding counts to those complaints and refiling them in the same court as separate actions. "The res judicata doctrine . . . not only binds the parties and their privies as to grounds or issues actually litigated, but also 'as to any other admissible matter which might have been offered for that purpose.'" Sanchez v. Caribbean Carriers Ltd., 552 F.2d 70, 71 (2d Cir. 1977) (citation omitted) (barring second suit arising from identical facts and

---

*(cont'd from previous page)*
prior suit is dismissed for lack of jurisdiction, the inclusion of additional factual allegations on the jurisdictional issue will not avoid issue preclusion when those facts were available at the time the original complaint was filed.").

issues where court had already dismissed similar action for lack of jurisdiction, and finding that new claim asserted by plaintiff did not affect decision); see Churchill v. Star Enters., 183 F.3d 184, 194 (3d Cir. 1999) (cited by Plaintiffs; affirming district court decision holding that prior ruling did have preclusive effect on subsequent lawsuit where there "were new allegations but the thrust of the two complaints remained practically identical").

This is particularly true where, as here, the factual basis of the amendment was available to Plaintiffs at the time of the original filing. See Perry v. Sheahan, 222 F.3d at 309, 318 ("[W]here a prior suit is dismissed for lack of jurisdiction, the inclusion of additional factual allegations on the jurisdictional issue will not avoid issue preclusion when those facts were available at the time the original complaint was filed. Only facts arising after the complaint was dismissed – or at least after the final opportunity to present the facts to the court – can operate to defeat the bar of issue preclusion."); see also Magnus Elecs., Inc. v. La Republica Argentina, 830 F.2d 1396, 1400 (7th Cir. 1987) ("[I]t does not make sense to allow a plaintiff to begin the same suit over and over again in the same court, each time alleging additional facts that the plaintiff was aware of from the beginning of the suit, until it finally satisfies the jurisdictional requirements").

## C. Independently, The Court Should Dismiss The Claims Against The Outside Directors For Lack Of Subject Matter Jurisdiction.

Plaintiffs concede that they still have not asserted any federal claims against the Outside Directors in the Duplicative Complaints. Therefore, the Court's well-reasoned decision that it lacked subject matter jurisdiction over the state law claims against the Outside Directors in the Original Action should apply equally to the Duplicative Complaints. Lemon Bay Partners, 2007 WL 1830899, at *4 ("The court concludes that that this alleged connection between the

7

federal claim and state law claims, even if true, is far too attenuated to form the basis for federal subject matter jurisdiction.").

Plaintiffs' claim that they have "cured" the lack of subject matter jurisdiction rings hollow. (Ans. Br. at 15). The Duplicative Complaints contain nothing that alters the fundamental character of Plaintiffs' claims against the Outside Directors, which sound only in state fiduciary duty law. As for the diversity allegation in the Benoit action, the Court has already ruled that it will not rescue Plaintiffs from their own tactical choice not to plead diversity as a basis for jurisdiction when they had the chance. Lemon Bay Partners, 2007 WL 1830899, at *5 n.9 ("[T]he plaintiffs cannot now assert diversity as a possible basis for subject matter jurisdiction."). See, e.g., In re Digital Island Sec. Litig., C.A. No. 02-57-GMS, 2002 WL 31667863, at *1 (D. Del. Nov. 25, 2002) ("When faced with the defendants' motion to dismiss, the plaintiffs would have been well within their rights to request leave to amend. Instead, they chose to oppose the motion, in its entirety, without seeking such relief. Such an approach is highly suspect as the plaintiffs were aware of the facts which they now seek to add at the time the original pleading was filed. Thus, there is no excuse for failure to plead them before the case was dismissed."), aff'd, 357 F.3d 322 (3d Cir. 2004). For all of these reasons, the Duplicative Actions should be dismissed.

## II.    THE DUPLICATIVE COMPLAINTS SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACKED STANDING AND DEMAND WAS NOT EXCUSED.

As explained in the Outside Directors' opening brief, the Duplicative Complaints should be dismissed because under controlling Maryland law, breach of fiduciary duty claims are derivative, not direct, in nature, and Plaintiffs' standing to pursue them was extinguished when the BAC Merger closed. (Op. Br. at 17-21). Moreover, even if Plaintiffs were allowed to circumvent the contemporaneous ownership rule and assert derivative claims, Plaintiffs' claims

8

should be dismissed for failure to make a demand on either the MBNA or BAC boards of directors.  (Op. Br. at 21-22).

### A.    Under Maryland Law, Breach Of Fiduciary Duty Claims Are Derivative.

The parties agree that Maryland law should govern all claims against the Outside Directors.  (Ans. Br. at 12-13).

As explained in the opening brief (Op. Br. at 17-18), under Maryland law, a director's obligation "*runs . . . to the corporation* and not, at least directly, to the shareholders." Werbowsky v. Collomb, 766 A.2d 123, 144 (Md. 2001) (emphasis added).  By definition, then, any claims for breach of fiduciary duty under Maryland law are derivative in nature, because they are "enforceable" only "by the corporation or in the right of the corporation," and not directly (by way of a class claim or otherwise) by stockholders. See Maryland Corporate Code ("MCC") § 2-405.1(g) ("Nothing in this section creates a duty of any director of a corporation enforceable *otherwise than by the corporation or in the right of the corporation*.") (emphasis added). See also Waller v. Waller, 49 A.2d 449, 452 (Md. 1946) ("Where directors commit a breach of trust, they are liable to the corporation, not to its creditors or stockholders, and any damages recovered are assets of the corporation, and the equities of the creditors and stockholders are sought and obtained through the medium of the corporate entity.").  In response to this controlling authority, Plaintiffs cite dicta in a later Maryland Court of Appeals case for the proposition that "directors of a corporation '[o]ccupy a fiduciary relation to the corporation and its stockholders." Storetrax.com, Inc. v. Gurland, 915 A.2d 991, 1000 (Md. 2007) (citation omitted).  That is in no way inconsistent with Maryland law providing that a director's duties run to the corporation "and not, *at least directly*, to the shareholders." Werbowsky, 766 A.2d at 133 (emphasis added).  Under Maryland law, directors owe fiduciary duties to shareholders only

indirectly, through the corporation, and claims that directors have breached those duties must be brought in the name of the corporation.

Rather than address the controlling Maryland authority cited by the Outside Directors, Plaintiffs instead rely on a series of decisions from federal courts and Delaware state courts. (Ans. Br. at 19-21). For example, Plaintiffs rely on the Second Circuit's decision in Strougo v. Bassini, 282 F.3d 162 (2d Cir. 2002), which held that Maryland law recognizes fiduciary duties owed by directors to both the company and its stockholders. However, in reaching this conclusion, the Strougo court failed to cite to the Maryland Court of Appeals' decision in Werbowsky, which confirmed that directors' fiduciary obligations flow only to the corporation.[4] Werbowsky, 766 A.2d at 133. Another federal court addressing this issue, however, acknowledged Werbowsky and its holding that fiduciary duty claims under Maryland law may be brought only by the corporation, not stockholders. See Jolly Roger Fund LP v.

---

[4]  The remaining federal court opinions cited by Plaintiffs are even less relevant. See Univ. of Md. at Baltimore v. Peat Marwick Main & Co., 923 F.2d 265, 272 (3d Cir. 1991) (analyzing claims against insolvent insurer under Pennsylvania insurance law); Thorn v. Reliance Van Co., C.A. No. 84-1740, 1985 U.S. App. LEXIS 25929, at *5 (3d Cir. Dec. 6, 1985) (analyzing breach of fiduciary duty under Pennsylvania law); LeBoyer v. Greenspan, C.A. No. 03-5603-GHK, 2007 WL 4287646, at *5 (C.D. Cal. June 13, 2007) (comparing direct and derivative claims under Delaware law). Most of the few Maryland state court cases Plaintiffs bother to acknowledge are actually *supportive* of the Outside Directors' position. See Indurated Concrete Corp. v. Abbott, 74 A.2d 17, 22 (Md. 1950) (citing Waller and recognizing that "[a]n action at law to recover for an injury to a corporation can be brought *only in the name of the corporation itself* acting through its board of directors") (emphasis added); Mona v. Mona Elec. Group, Inc., 934 A.2d 450, 464 (Md. Ct. App. 2007) (same); Tafflin v. Levitt, 608 A.2d 817, 820 (Md. Ct. Spec. App. 1992) (noting that fraudulent transfer claims raised by depositors of insolvent savings and loan association were *derivative*). The other state court cases are entirely inapposite. See Toner v. Baltimore Envelope Co., 498 A.2d 642, 647 (Md. 1985) (dealing with dispute involving small, closely held company and focusing on relationship between majority and minority stockholders, not directors and shareholders); Jasinover v. Rouse Co., C.A. No. 13-C-04-59594, 2004 WL 3135516, at *13 (Md. Cir. Ct. Nov. 4, 2004) (denying preliminary injunction without reaching issue of standing because plaintiff had a "low probability of being able to prevail on the merits").

Sizeler Prop. Investors, Inc., C.A. No. RDB 05-841, 2005 WL 2989343, at *6 (D. Md. Nov. 3, 2005). In fact, the court in Jolly Roger expressly distinguished Strougo on the grounds that the Strougo court ignored the Werbowsky decision. Id. at *5.[5] In short, Plaintiffs have provided no reason for this Court to ignore controlling Maryland law.

**B.    Plaintiffs Lost Standing To Pursue Claims Against The Outside Directors.**

As explained in the opening brief, pursuant to the black-letter "contemporaneous ownership" rule, all three counts against the Outside Directors should be dismissed because Plaintiffs – former MBNA stockholders – lost standing to pursue derivative claims against MBNA's board of directors when they ceased being stockholders of MBNA by reason of the BAC Merger. (Op. Br. at 19-21). See, e.g., Ettridge v. TSI Group, Inc., 548 A.2d 813, 817-18 (Md. 1988); Danielewicz v. Arnold, 769 A.2d 274, 281-82 (Md. Ct. Spec. App. 2001). Plaintiffs acknowledge, as they must, that they have lost standing as MBNA stockholders to pursue claims on behalf of MBNA, which no longer exists as a result of the BAC Merger. (Ans. Br. at 34-35). Instead, Plaintiffs argue that the contemporaneous ownership rule does not extinguish their ability *as BAC stockholders* to pursue the exact same derivative claims they are constrained from pursuing as MBNA stockholders. (Ans. Br. at 34-37). Plaintiffs even go so far as to suggest that this is how the contemporaneous ownership rule is applied in Delaware. Not so.[6]

---

[5]    For this reason, Plaintiffs' reliance on Delmarva Sash – which in turn relied on Strougo – also is misplaced. Delmarva Sash & Door Co. of Md., Inc. v. Andersen Windows, Inc., 218 F. Supp. 2d 729, 734 (D. Md. 2002).

[6]    Plaintiffs rely in error on Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726 (Del. 1988), for the proposition that the Outside Directors lack standing to raise this issue. (Ans. Br. at 35 n.22). In Kaplan, unlike here, the corporation affirmatively stated an official position of neutrality. 540 A.2d at 729. (However, the Court in Kaplan also held that third parties may raise as a defense a plaintiff's failure to make demand. Id. at 730.) Moreover, it is disingenuous of Plaintiffs to argue that BAC's posture on the case is unknown to Plaintiffs
(cont'd)

11

Under Delaware law, stock-for-stock mergers eliminate the standing of a plaintiff to pursue derivative claims on behalf of a corporation that no longer exists. See, e.g., In re First Interstate Bancorp Consol. S'holder Litig., 729 A.2d 851 (Del. Ch. 1998); see also Lewis v. Ward, 852 A.2d 896, 903-04 (Del. 2004) (rejecting plaintiffs' request to ignore application of contemporaneous ownership rule in context of stock-for-stock mergers). The plaintiffs in First Interstate made the same argument made by Plaintiffs here, and asked the court to modify the contemporaneous ownership rule because they received stock in a new company in the merger. First Interstate, 729 A.2d at 867. The Court rejected this argument, holding that such an exception "would not apply to 'mergers with outside or pre-existing corporations with substantial assets.'" Id. Nearly the same argument was also rejected by the Delaware Supreme Court in Lewis v. Ward. 852 A.2d at 904 (holding that "we ratify and reaffirm the general rule" that derivative claims are extinguished by mergers, including stock-for-stock mergers); see also Feldman v. Cutaia, C.A. No. 446, 2008 WL 2223084, at *3 (Del. May 30, 2008) ("Twenty-four years ago, in the seminal case of Lewis v. Anderson, this Court held that a corporate merger generally extinguishes a plaintiff's standing to maintain a derivative suit.").

Plaintiffs ignore the basic requirement of the contemporaneous ownership rule – that plaintiffs actually be stockholders at the time the purported claims arise. See, e.g., Danielewicz, 769 A.2d at 281 (noting that a "'shareholder does not have standing to recover against directors for acts which took place prior to the shareholder becoming a shareholder'"). Here, Plaintiffs became BAC stockholders when the BAC Merger closed on January 1, 2006. (Ans. Br. at 35). Plaintiffs were thus not BAC stockholders at the time of any of the alleged

---

(cont'd from previous page)

and in the same brief contend that demand is futile because the BAC board is purportedly antagonistic to their lawsuit. (Ans. Br. at 37-38).

wrongful conduct, which occurred prior to the BAC Merger. (Indeed, BAC stockholders would not have been owed duties by the Outside Directors of MBNA.) By definition, Plaintiffs cannot satisfy the standards of the contemporaneous ownership rule, and have no standing to pursue their claims. Danielewicz, 769 A.2d at 281.

## C.    Plaintiffs Have Not Excused Their Failure To Make A Pre-Suit Demand.

Even if the Court were to conclude that Plaintiffs still had standing to pursue their claims, Plaintiffs have failed to show – under Delaware law, because BAC is a Delaware company – why demand on the BAC board would be excused. Plaintiffs effectively concede that they have offered no particularized, specific allegations about any of BAC's directors that support the notion that they are unable to consider fairly any demand. (Ans. Br. at 37-38). As the Outside Directors explained in their opening brief, Plaintiffs' conclusory allegations of demand futility fail to excuse demand. (Op. Br. at 21-22). Plaintiffs' lone attempt to argue that a demand on the BAC board would be futile is based on their allegation that the BAC board of directors "has pledged in writing to oppose and defend *the very claims plaintiffs have asserted*." (Ans. Br. at 37 (emphasis added)). Plaintiffs' reasoning fails as a matter of fact and law.

*First*, the specific language upon which Plaintiffs rely to support their assertion is the typical boilerplate indemnification language found in any standard merger agreement. See Merger Agreement at Section 6.7 (Op. Br. Ex. D); see also In re Talley Indus., Inc. S'holders Litig., C.A. No. 15961, 1998 WL 191939, at *4 n.1 (Del. Ch. Apr. 13, 1998) (recognizing as "typical" and "common[]" the exculpation, indemnification and insurance provisions included in merger agreement). Notably absent from the provision is any mention of these Plaintiffs or their specific claims, and Plaintiffs have no basis to suggest that their lawsuit was the sole impetus for the inclusion of Section 6.7 in the Merger Agreement.

*Second*, written indemnity and insurance obligations do not "preordain that the Board would reject a demand that otherwise had merit." Grobow v. Perot, 526 A.2d 914, 925 n.14 (Del. Ch. 1987) (granting motion to dismiss for failure to plead demand futility, holding that "[i]ndemnification as an adjunct to a business transaction is not illegal or necessarily imprudent. . . . Accordingly, it would be incorrect to conclude that the mere presence of the indemnity provision in the buy-out agreement would [obligate] the Board [to] reject a demand that otherwise had merit."), aff'd, 539 A.2d 180 (Del. 1988). See also In re Prudential Ins. Co. Derivative Litig., 659 A.2d 961, 973 (N.J. Super. Ct. Ch. Div. 1995) ("[R]outine excuse of demand based on the existence of such standard [coverage] exclusions would eviscerate the demand requirement. . . . Pleading that the board would be swayed by the existence of the afore-mentioned [insurance] policies is insufficient to show lack of director interest.").

For all of these reasons, the Duplicative Complaints should be dismissed.

## III.    IN THE ALTERNATIVE, THE DUPLICATIVE COMPLAINTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

As explained above, there are powerful reasons why the Court should dismiss the claims against the Outside Directors without reaching the merits of those claims. However, to the extent the Court does consider the merits, each of the counts of the Duplicative Complaints that name the Outside Directors should also be dismissed for failure to state a claim.

### A.    Conclusory Breach Of Fiduciary Duty Allegations Fail To State A Claim.

As the Outside Directors explained in their opening brief, Maryland law requires a plaintiff to allege facts sufficient to rebut the statutory business judgment presumption in order to state a fiduciary duty claim. (Op. Br. at 25). Plaintiffs suggest, however, that under federal law – as opposed to Maryland state law – they are not required to plead facts that set forth a claim for breach of fiduciary duty. (Ans. Br. at 13-14). Even the authority cited by Plaintiffs, however, recognizes an elevated pleading standard controlling shareholder derivative suits. See

14

In re Tower Air, Inc., 416 F.3d 229, 236-38 (3d Cir. 2005). Plaintiffs have not even attempted to satisfy this heightened pleading standard. (Ans. Br. at 13-14).

Under any pleading standard, Plaintiffs have failed to state a claim for breach of fiduciary duty against the Outside Directors. Plaintiffs failed to adequately allege that the Outside Directors received any personal benefit from their approval of the Merger, or that they lacked independence. (Op. Br. at 25). Plaintiffs also failed to allege any basis for concluding as a matter of law that any of the Outside Directors sold *any* securities (based on inside information or otherwise); committed mismanagement or waste; made any misstatements or omissions to the public; or ignored red flags about MBNA's financial condition at any time. (Op. Br. at 26). Plaintiffs did not specifically respond to any of these arguments, preferring instead to lump the Outside Directors together with the Inside Directors when discussing their claims. (See, e.g., Ans. Br. at 17-18 ("Hammonds *and the Outside Directors* orchestrated a merger. . . .").

Most significantly, however, the Outside Directors demonstrated in their opening brief that Plaintiffs have not alleged that a majority of the MBNA board acted disloyally (i.e., by having a material self-interest in the transaction) or failed to act independently or in good faith in connection with the Merger. (Op. Br. at 25-26). Critically, Plaintiffs do not even attempt to rebut this argument. As a result, any breach of fiduciary duty claims relating to the BAC Merger – whether considered direct or derivative – should be dismissed. (See, e.g., Op. Br. at 24, citing Danielewicz, 769 A.2d at 296); see also Blackmore Partners L.P. v. Link Energy LLC, C.A. No. 454-N, 2005 WL 2709639, at *7 (Del. Ch. Oct. 14, 2005) ("The protections of the business judgment rule . . . insulate a board decision from challenge so long as a majority of the directors approving the transaction remain disinterested."); In re Freeport-McMoRan Sulphur, Inc. S'holders Litig., C.A. No. 16729, 2001 WL 50203, at *5 (Del. Ch. Jan. 11, 2001) (dismissal warranted where plaintiff failed to establish that majority of board was interested).

Plaintiffs argue that because Hammonds allegedly engaged in self-dealing, his involvement in the negotiations with BAC taints the decision of the MBNA board to enter into the BAC Merger. (Ans. Br. at 22-23). Even assuming for purposes of argument that Hammonds or anyone else had a conflict, that would not taint the decision of a majority of disinterested and independent directors, or remove their decision from the protections of the business judgment presumption. See, e.g., Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 363 (Del. 1993) ("This Court has never held that one director's colorable interest in a challenged transaction is sufficient, without more, to deprive a *board* of the protection of the business judgment presumption of loyalty.") (emphasis in original); In re Frederick's of Hollywood, Inc. S'holders Litig., C.A. No. 15944, 2000 WL 130630, at *7 (Del. Ch. Jan. 31, 2000) (dismissing duty of loyalty claim because plaintiff alleged that only one of four directors was interested and because the challenged merger was approved by a majority of disinterested directors).

Plaintiffs fare no better with their argument based on Hammonds' alleged lead role in negotiations with BAC. (Ans. Br. at 18, 22-24). It is not uncommon or untoward for a Chief Executive Officer to lead negotiations with a potential merger partner. See, e.g., In re MONY Group Inc., S'holder Litig., 852 A.2d 9, 20 (Del. Ch. 2004); Parnes v. Bally Entm't Corp., C.A. No. 15192, 2001 WL 224774, at *10 (Del. Ch. Feb. 23, 2001), aff'd mem., 788 A.2d 131 (Del. 2001). Moreover, Plaintiffs do not allege that the MBNA board was unaware of Hammonds' discussions with BAC's Lewis, or that it had no input into those discussions. Finally, Plaintiffs' contention is directly countered by facts alleged in the Complaint. Tower Air, 416 F.3d 229. Plaintiffs took great pains to explain that the MBNA board, including the Outside Directors, engaged in a thorough search process for potential merger partners, and had hired both legal and (two) financial advisors. (Ans. Br. at 9-10). Plaintiffs' attempt in their answering brief to draw a negative inference from the hiring of these sophisticated advisors (Ans. Br. at 10) is

baseless. See, e.g., Jasinover, 2004 WL 3135516, at *9 ("In performing his duties, a director is entitled to rely on any information, opinion, report or statement" provided by his expert advisor).

Plaintiffs also fail to establish a conflict of interest by pointing to the standard indemnification that all of the MBNA board members – including the Outside Directors – will receive for any liability incurred in the Securities Action, as well as this derivative action. (Ans. Br. at 28). As an initial matter, the Outside Directors are not even defendants in the Securities Action. In addition, a charge that a director was indemnified is insufficient as a matter of law to establish a disabling conflict of interest. See, e.g., Decker v. Clausen, C.A. Nos. 10684, 10685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (granting motion to dismiss; describing plaintiff's argument that provision indemnifying directors against litigation liability rendered directors "interested" in a proposed decision as a "variation[] on the 'directors suing themselves' and 'participating in the wrongs' refrain [that] provide no particularized facts creating a reasonable doubt that the directors are disinterested or independent."). Plaintiffs' argument is also undermined by the facts alleged in the Duplicative Complaints. Tower Air, 416 F.3d 229. As the Outside Directors previously explained, Plaintiffs allege that the MBNA board *turned down* an earlier offer from Wachovia before accepting the BAC offer, a fact clearly inconsistent with the theory that Defendants were desperate to sell the Company. (Op. Br. at 20-21). Similarly, Plaintiffs' attempt to draw a negative inference from Hammonds' "no 'For Sale' sign" comment in *Business Week* runs counter to their theory that he and other Defendants were desperate to sell at any price.

## B.    Maryland Law Does Not Recognize Plaintiffs' Revlon Claims.

As explained in the opening brief (Op. Br. at 29), Maryland law does not subject directors who approve a change of control transaction "to a higher duty or greater scrutiny than is applied to any other act of a director." MCC § 2-405.1(f)) This includes so-called Revlon duties,

which are the embodiment of a heightened standard of conduct imposed by *Delaware* courts that require *Delaware* directors who engage in a change of control transaction to obtain the highest value reasonably obtainable. As a leading Maryland commentator has explained, Section 2-405.1 of the Maryland Corporate Code "negates the applicability of the <u>Unocal</u> and <u>Revlon</u> standards in Maryland." <u>See</u> Kenneth B. Abel, <u>The Maryland Corporation: Legal Aspects of Organization & Operation</u> § VI(H) (2004). This dooms many of Plaintiffs' claims relating to the BAC Merger, which are premised on the application of <u>Revlon</u> duties. (<u>See</u> Ans. Br. at 24-29).

In an attempt to salvage their claims, Plaintiffs make the strained argument that Maryland law somehow imposes <u>Revlon</u> duties as part of a business judgment rule analysis, suggesting that the "presumption that the directors satisfied [their *Revlon*] duties" can be rebutted by alleging facts that show that the MBNA directors failed to "maximize value." (Ans. Br. at 25). This argument fails, as Plaintiffs are attempting to shoehorn the Delaware concept of <u>Revlon</u> duties into a Maryland corporate law analysis – something the Maryland legislature and courts have conclusively rejected. <u>See</u> 2-405.1(f); <u>Jasinover</u>, 2004 WL 3135516, at *9 ("Maryland law is less restrictive than the view of Delaware law that Plaintiff espouses.").[7]

Plaintiffs also contend that, even if <u>Revlon</u> duties do not apply in Maryland, they have stated a claim because the MBNA board entered into the BAC Merger without providing for a valid market check. (Ans. Br. at 26-27). Putting aside whether a "market check" is even required under Maryland law, <u>see</u> <u>Jasinover</u>, 2004 WL 3135516, at *9 ("the Board is free to lock

---

[7]    Plaintiffs cite a snippet of transcript from <u>Wittman v. Crooke</u>, 707 A.2d 422 (Md. Ct. Spec. App. 1998), which does not cite <u>Revlon</u> and fails to support the proposition that <u>Revlon</u> duties exist under Maryland law. (Ans. Br. at 24). Although the court stated that "'[directors] have a duty of loyalty to [the Company] and shareholders to do their very best for them. . . *which they conclude is very good for the Company*,'" 707 A.2d at 425 (emphasis added), nowhere does the court in <u>Wittman</u> state that directors are required to obtain *for stockholders* the highest price reasonably available, as the <u>Revlon</u> court so concluded.

up an attractive deal"), this contention finds no support in the Duplicative Complaints, which clearly allege that the board engaged in a pre-merger market check by exploring strategic options (Lemon Bay ¶¶ 3, 78; Benoit ¶¶ 3, 79), and a 6-month post-merger market check (between the time that the MBNA board publicly announced the BAC Merger and when the stockholders voted to approve the deal) when any other potential suitor could have come forward with a competing proposal. (Lemon Bay ¶¶ 15,16; Benoit ¶¶ 15,16); see also MONY Group, 852 A.2d at 22 (holding that five-month post-agreement market check was sufficient); Toys "R" Us, Inc. S'holders Litig., 877 A.2d 975, 1006-07 (Del. Ch. 2005) (rejecting plaintiffs' argument that public announcement of deal was not enough to signal potential suitors to make alternative bid"). Thus, Plaintiffs' argument that the MBNA board acted improperly by "concealing" the BAC Merger is without merit, and the cases relied on to support that argument are misplaced. (Ans. Br. at 10, 23).

Plaintiffs further argue that agreeing to a "no-shop" provision in the BAC Merger Agreement, which limited the ability of the MBNA board to talk with other potential suitors post-agreement, along with granting a stock option to BAC, is improper whether considered under Delaware or Maryland law. (Ans. Br. at 25-26). This argument must fail. *First*, Maryland law is clear that "the Board is free to lock up an attractive deal and use post-agreement methods to do so." Jasinover, 2004 WL 3135516, at *9. *Second,* similar deal protection provisions have been upheld under the more rigorous forms of scrutiny imposed by Delaware courts. See, e.g., Yanow v. Scientific Leasing, Inc., C.A. No. 9536,1988 WL 8772, at *4-6 (Del. Ch. Feb. 5, 1988) (rejecting claim that board's (i) agreeing to a no-shop provision restricting it from negotiating a transaction at a higher price post-agreement; and (ii) granting of a stock option to acquiror that, if exercised, would result in acquiror owning about 16.6% of target's shares, violated board's *Revlon* duties). In any event, Plaintiffs here do not even allege – nor

could they – that a potential suitor was prevented from making a competing bid due to the terms of the BAC Merger.  For all of these reasons, Counts Six and Seven should be dismissed as to the Outside Directors.

## C.    The Outside Directors Are Not Subject To Liability For Money Damages.

As explained in the opening brief (Op. Br. at 35-36), MBNA's charter contains a provision authorized by Maryland law that exculpates directors from personal liability.  See MCC § 5-418.  As a leading Maryland commentator has explained, Section 5-418 allows a Maryland corporation to insulate directors from liability stemming from *all claims short of fraud*, including for breaches of the duty of loyalty.  See James J. Hanks, Jr., Maryland Corporation Law, at § 6.9.  Plaintiffs do not dispute that MBNA's charter contains a valid Section 5-418 charter provision, but argue that the Court should not consider it on a motion to dismiss.  (Ans. Br. at 29).  Maryland law is to the contrary.  See, e.g., Grill v. Hoblitzell, 771 F. Supp. 709, 712 (D. Md. 1991) (granting motion to dismiss waste and mismanagement claims under § 5-418).[8]

## CONCLUSION

For all of the foregoing reasons, the Outside Directors respectfully request that their motion to dismiss be granted, and that all claims against them be dismissed.

*Of The New York Bar:*
Jay B. Kasner
Susan L. Saltzstein
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
4 Times Square
New York, New York  10036-6522
Tel.: (212) 735-3000

*/s/ Edward P. Welch*
Edward P. Welch (I.D. No. 671)
Edward B. Micheletti (I.D. No. 3794)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
Wilmington, Delaware  19899
Tel.: (302) 651-3000
E-mail:  ewelch@skadden.com
*Attorneys for the MBNA Outside Directors*

---

[8]    For this same reason, Plaintiffs' argument that ratification cannot be addressed on a motion to dismiss is in error.